**FILED**
**May 21, 2019**
**10:16 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **SHAREE CLAY,** | ) | |
| **Employee,** | ) | **Docket No. 2015-06-0977** |
| | ) | |
| **v.** | ) | **State File No. 91296-2014** |
| | ) | |
| **SIGNATURE HEALTHCARE,** | ) | **Judge Joshua D. Baker** |
| **Employer.** | ) | |

## COMPENSATION HEARING ORDER

The Court convened a compensation hearing on April 17, 2019, to consider Ms. Clay's claim for temporary disability, permanent-partial disability, and medical benefits for injuries to her neck and shoulder. Signature said the injuries were not causally related to her work and denied her claim. For the reasons below, the Court holds Ms. Clay is entitled to all the requested benefits.

## Claim History

Ms. Clay worked for Signature Healthcare as a CNA assisting patients to prepare for independent living. While helping a patient shower on November 15, 2014, the patient began to slide out of the shower chair toward the floor. Ms. Clay grabbed the patient to keep him from falling and felt a pop in her left shoulder and immediate pain. The first report of injury described the incident as "pain in left shoulder and neck after catching patient." She denied having any problems with her neck or shoulder before the incident.

Four days later, Ms. Clay collided with another vehicle while traveling roughly five to ten miles per hour in a grocery store parking lot. She testified that she injured her left leg, wrist, and elbow in the accident and denied that it injured or worsened her shoulder or neck condition. Ms. Clay, however, did file a lawsuit seeking damages for injuries incurred during the car accident.

Initially, Signature accepted Ms. Clay's workers' compensation claim, and Concentra provided conservative treatment. According to Ms. Clay, Concentra performed no diagnostic tests and only recommended physical therapy. Concentra released her to full-duty work on December 10, 2014, and she received no further medical treatment. Signature denied her claim.[1]

Ms. Clay returned to work for Signature on December 10. She worked for a few hours, but then she voluntarily resigned after deciding she could not safely care for patients in her injured condition.

A month later, Ms. Clay began working as a hair stylist, and the job required significant physical exertion. Her pain, which had lessened while off work, returned but did not worsen. She worked as a stylist for a year. After ending her job as a stylist, Ms. Clay resumed working as a CNA earning more money than she earned at Signature.

Throughout her work as a stylist and again as a CNA, Ms. Clay continued to suffer symptoms in her left shoulder and neck. She sought treatment from her primary care physician, who referred her to Dr. James Oglesby, an orthopedic surgeon. Ms. Clay described the work incident to Dr. Oglesby and told him about the car accident. Dr. Oglesby noted that Ms. Clay had a "traumatic impingement of the left shoulder, by history related to the work accident and not significantly impacted by the automobile accident." He operated on her left shoulder and took her off from work for fifteen days afterward. Dr. Oglesby also referred Ms. Clay to Dr. Greg Lanford, a spine specialist, for her neck pain.

Dr. Lanford diagnosed Ms. Clay with cervical spondylosis and radiculopathy. Because conservative treatment failed, he recommended an anterior fusion from C4-6, but she never had the surgery. She has not treated with Dr. Lanford since he recommended the surgery.

Because of the controversy surrounding the cause of her injuries, Ms. Clay underwent three independent evaluations, and the experts' opinions varied. Defense experts Dr. Sean Kaminsky and Dr. Robert Weiss did not believe the work injury primarily caused Ms. Clay's condition. Dr. Kaminsky attributed her shoulder and neck symptoms to age-related degenerative conditions but admitted it was possible her workplace incident aggravated those underlying conditions. Concerning her neck, Dr. Weiss ascribed her symptoms to her physical condition, mainly her age and weight. Neither doctor definitively attributed her symptoms to either the car accident or her work as a stylist, but both believed these could have been causes for her condition.

---

[1] Three months after the work injury, Signature denied Ms. Clay's claim, asserting her car accident was a subsequent intervening event that caused her injuries. It also asserted that Ms. Clay's injuries resulted from a preexisting, degenerative condition aggravated by hairstyling.

Dr. David West evaluated Ms. Clay at the request of her attorney. He determined both her shoulder and neck conditions arose primarily from her employment and assigned nine-percent impairment for the neck and two percent for the shoulder. Specifically, he determined that the work accident aggravated degenerative conditions in Ms. Clay's shoulder and neck.

Dr. Oglesby gave two depositions. At the first deposition, he testified that Ms. Clay's left-shoulder injury was more than fifty percent related to her workplace incident. He assigned a two-percent impairment rating for her shoulder injury. Based on the imaging studies, he believed her neck condition did not result from the accident but said he would defer to Dr. Lanford if he said "otherwise."

At Dr. Oglesby's second deposition, after reviewing additional records, he at first affirmed the two-percent impairment rating and his prior causation opinion. He relied heavily on the first report of injury, citing its probable validity, while discounting the treatment notes from other providers and therapists. Dr. Oglesby believed that the treatment records created by other providers and therapists were less reliable and "sort of bring to mind that old game of gossip where you whisper something to the kid next to you and by the time it gets back to you, it's something totally different." He said that, absent additional information showing a different cause, he would "go back to my statement of believing my patient, who told me that she injured her shoulder and neck when she tried to catch a patient who was slipping out of a chair while she was at work at Signature Healthcare."

However, later in the deposition Dr. Oglesby equivocated when presented with information about her post-accident work and prior treatment for her injuries. He admitted to being "mystified" and having difficulty finding the truth. In the end, Ms. Clay's omission of details about her initial treatment following the accident and her work after leaving Signature caused Dr. Oglesby to question her veracity. He asked for additional time to review records and issue an opinion. The parties never reconvened to collect further testimony, and Dr. Oglesby wrote a letter giving his revised opinion, which the Court declined to admit into evidence on Ms. Clay's hearsay objection.[2]

The last deposition came from Dr. Lanford. He admitted Ms. Clay had underlying degenerative issues in her neck but believed they became "clinically real" after her workplace accident. He determined, that based on the records and her history, Ms. Clay's neck injury arose primarily from her workplace accident and assigned an impairment rating of fifteen percent to the body as a whole.

---

[2] Signature made an offer of proof, and the Court included the letter in the record as exhibit 20, marked for identification purposes only.

**Findings of Fact and Conclusions of Law**

Ms. Clay seeks temporary disability, permanent-partial disability, and medical benefits. She has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2018) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

To recover benefits, Ms. Clay must establish that her injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14). From a factual perspective, this was simple. Ms. Clay testified she got hurt trying to stop a patient from falling while in the shower. Her testimony is unrefuted, and the Court finds that an incident happened in the shower in the manner Ms. Clay described. The uncertainty here concerns the effect of the incident on Ms. Clay's shoulder and neck, as she had a motor vehicle accident and worked as a hairstylist after the incident occurred.

Due to the intersection of these possible causal events, the medical testimony on causation is pivotal. To prove medical causation, Ms. Clay must present sufficient medical proof to show to a reasonable degree of medical certainty that "the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." *Id*. at § 50-6-102(14)(B). Ms. Clay treated with two doctors and several more evaluated her. When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation. *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). When faced with competing expert opinions, the Court can consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Lamb v. KARM Thrift Stores, LLC,* 2017 TN Wrk. Comp. App. Bd. LEXIS 42, at *7 (Jul. 26, 2017).

Five doctors gave depositions in this case: two treating physicians, and three independent medical examiners (IMEs). Of these physicians, the Court credits Dr. Lanford's and Dr. West's testimony and rejects the testimony from Dr. Oglesby, Dr. Kaminsky and Dr. Weiss.

Dr. Lanford causally related Ms. Clay's neck injury to the workplace accident and assigned an impairment rating of fifteen-percent to the body as a whole. As a board-certified neurosurgeon who saw Ms. Clay on several occasions and recommended surgery to correct her neck condition, the Court finds his testimony and opinion

4

compelling. Additionally, his opinion correlates with Ms. Clay's explanation of her symptoms. *See Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 774 (Tenn. 2000) (An employee's own assessment of her physical condition is competent testimony.).

Ms. Clay testified that she began experiencing pain when the workplace incident occurred. Additionally, the medical records show she gave a consistent history to each of the physicians, including Dr. Lanford. Her consistent explanation of her symptoms and their cause, which is borne out by the medical records, indicates reliability. The Court finds Ms. Clay testified credibly, and because Dr. Lanford relied heavily on the history she provided to reach his causation opinion, the Court holds Ms. Clay suffered an injury to her neck that arose primarily out of and in the course and scope of her employment and resulted in fifteen-percent permanent partial disability.

The Court also found Dr. West's testimony concerning the cause of Ms. Clay's shoulder condition and his assignment of two-percent impairment for that condition helpful. Although he provided no treatment, he conducted a thorough examination, and similarly to Dr. Lanford, his causation opinion aligned more closely with Ms. Clay's explanation of her symptoms. This injury caused two-percent impairment to her body as whole.

Dr. Oglesby, the only physician to operate on Ms. Clay, gave two depositions. In the first, he causally related Ms. Clay's shoulder condition to her work incident but did not relate her neck condition. In the second, his opinion fluctuated between confidence in his previous causation opinion and uncertainty of Ms. Clay's veracity. As a treating physician, his opinion on causation is highly relevant and might carry significant weight. *See Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991) ("It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one."). However, after reading both depositions multiple times, the Court cannot clearly discern Dr. Oglesby's opinion on causation. For this reason, the Court cannot rely on his testimony.[3]

The Court rejects the causation opinions from Dr. Kaminsky and Dr. Weiss, as they seem less plausible in light of Ms. Clay's explanation of how her condition arose. Ms. Clay testified that she began suffering pain in her neck and shoulder on the date of the incident, and the pain never completely went away. While the severity intensified with activity, the pain never grew worse as a result of either the car accident or her work as a stylist. Dr. Kaminsky attributed Ms. Clay's symptoms to degenerative conditions, and Dr. Weiss ascribed them principally to her age and weight. However, each doctor

---

[3] Although Dr. Oglesby gave further opinion in a letter following the second deposition, the Court excluded it due to Ms. Clay's hearsay objection. However, even if the Court had accepted the opinion, it would still carry little weight, as the Court is uncertain as to whether Dr. Oglesby would maintain that opinion were he subjected to further cross-examination.

saw her only once, and, while they declined to primarily relate her work incident to her symptoms, both admitted her workplace incident possibly aggravated underlying degenerative conditions.

Based on the evidence presented, the Court holds that Ms. Clay suffered a compensable injury to her neck and shoulder that arose primarily out of and in the course and scope of her employment with Signature. The Court further holds that these injuries resulted in in a cumulative seventeen-percent permanent partial disability to her body as a whole.

Ms. Clay's seventeen-percent impairment entitles her to 76.5 weeks of permanent partial disability benefits. Tenn. Code Ann. § 50-6-207(3)(A). This results in an award of $20,731.50 (450 weeks x 17% x $271.00, her stipulated compensation rate). As Ms. Clay returned to work with a different employer where she earned the same or greater wages, the Court finds she is not entitled to any additional benefits under Tennessee Code Annotated section 50-6-207(3)(B).

Ms. Clay also seeks temporary total disability benefits for time she could not work after her shoulder surgery. To recover these benefits, she must show (1) she is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Jewell v. Cobble Constr. and Arcus Restoration*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 12, 2015). Dr. Oglesby took Ms. Clay off from work for fifteen days following her shoulder surgery. The Court holds that Signature must pay her $580.71 in temporary disability benefits for the time she missed from work.

**IT IS, THEREFORE, ORDERED** as follows:

1. Signature shall provide Ms. Clay with ongoing medical treatment for her work-related left-shoulder and neck injuries with Dr. Oglesby and Dr. Lanford.

2. Ms. Clay is entitled to $20,731.50 in permanent partial disability benefits for a seventeen-percent permanent impairment, and $580.71 in temporary total disability benefits for a total award of $21,312.21.

3. Counsel for Ms. Clay, Julie Reasonover, provided valuable services to Ms. Clay, and the Court awards her an attorney fee of twenty percent of the total award, or $4,262.44.

4. Costs of $150.00 are assessed against Signature Healthcare under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2018), for which execution may issue as necessary.

5. The parties shall file a completed SD-2 within thirty days of this order becoming final.

6. Absent an appeal of this order by either party, the order shall become final thirty days after issuance.

**ENTERED ON MAY 21, 2019.**

_____

**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

7

# APPENDIX

Exhibits:

1. Medical records
2. Deposition transcript of Dr. J. Wills Oglesby dated April 20, 2017
3. Deposition transcript of Dr. J. Wills Oglesby dated April 19, 2018
4. Deposition transcript of Dr. Sean Kaminsky
5. Deposition transcript of Dr. M. Robert Weiss
6. Deposition transcript of Dr. David West
7. First Report of Injury
8. Incident Report dated November 16, 2014
9. Choice of Physician forms
10. Wage Statement
11. Notice of Controversy
12. Ms. Clay's job description with Signature
13. Ms. Clay's job description with Smart Style
14. Deposition transcript of Dr. Gregory Lanford
15. Ms. Clay's résumé
16. Smart Style salon application
17. Smart Style time records
18. Complaint from Davidson County Circuit Court
19. Ms. Clay's answered interrogatories
20. Dr. Oglesby's letter dated April 20, 2018 (for identification purposes only)

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Joint Compensation Hearing Statement
4. Order Denying Motion to Enforce Stipulation
5. Order Denying Motion to Reconsider Stipulation Order
6. Order Granting Motion to Extend Deadlines to Obtain Medical Proof
7. Agreed Order to Extend Discovery Deadlines
8. Motion in Limine
9. Response to Motion in Limine
10. Order Denying Motion in Limine
11. Motion to Enforce Stipulation
12. Response to Motion to Enforce Stipulation

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Order was sent to the following recipients by the following methods of service on May 21, 2019.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Julie Reasonover, Employee's Attorney | | | X | julie@reasonoverlaw.com |
| Laurenn Disspayne, Employer's Attorney | | | X | ldisspayne@manierherod.com |

_____

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



## Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):** _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all
parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee
Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___.


[Signature of appellant or attorney for appellant]     _____


Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals
Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by
the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | | Telephone | $ _____ per month |
| Electricity | $ _____ per month | | School Supplies | $ _____ per month |
| Water | $ _____ per month | | Clothing | $ _____ per month |
| Gas | $ _____ per month | | Child Care | $ _____ per month |
| Transportation | $ _____ per month | | Child Support | $ _____ per month |
| Car | $ _____ per month | | | |
| Other | $ _____ per month (describe: _____) | | | |

10. Assets:

| | | | |
|---|---|---|---|
| Automobile | $ _____ | (FMV) | _____ |
| Checking/Savings Acct. | $ _____ | | |
| House | $ _____ | (FMV) | _____ |
| Other | $ _____ | Describe: | _____ |

11. My debts are:

Amount Owed         To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____